# 15-1584(L)

## 1597(Con)

### In the United States Court of Appeals
### for the Second Circuit

———————

Annmarie Avila, an individual; on behalf of herself and all others
similarly situated, Sara Elrod, an individual; on behalf of herself
and all others similarly situated,

*Plaintiffs - Appellants*,

v.

Riexinger & Associates, LLC, a Georgia Limited Liability Company,
Crown Asset Management, LLC, a Georgia Limited Liability Company,
Stephen P. Riexinger, an individually and in his official capacity,
John and Jane Does, Numbers 1 through 25, Bureaus Investment
Group Portfolio No.15, LLC, an Illinois Limited Liability Company,

*Defendants - Appellees.*

**On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)**

———————————————————

### REPLY BRIEF OF APPELLANTS

———————————————————

Philip D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
Telephone: (973) 379-7500
philip@sternthomasson.com
andrew@sternthomasson.com
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................... iii

**SUMMARY OF THE REPLY ARGUMENT** ..................................... 1

**ARGUMENT** ...................................................................................... 3

    **POINT I:  DEFENDANTS MISREPRESENTED A LAWYER'S ROLE IN THE DEBT COLLECTION PROCESS.** ................................. 3

        A.    Riexinger Signed the Letters as an Attorney at Law. ...................... 4

        B.    The Letters Misrepresented the Lawyer's Role ............................... 5

        C.    NY License Number 1414772. ........................................................ 6

        D.    Defendants Misinterpret Gonzalez and Lesher. ............................... 7

    **POINT II:  AVILA'S VALID UNLAWFUL INTEREST CLAIM IS NOT TIME-BARRED.** ........................................................................ 8

        A.    Avila May Contest the Statute of Limitations Defense .................. 9

        B.    The Claims Asserted in the Amended Complaint Relate Back ...... 10

        C.    Avila Asserted a Valid Claim for Usurious Interest Rates ............. 12

    **POINT III: DEFENDANT'S LETTER FAILED TO STATE THE DEBT'S AMOUNT AND THE CURRENT CREDITOR.** ....................... 13

        D.    The Letter Unlawfully Failed to Disclose Accruing Interest. ........ 13

        E.    The Letter Failed to State the Name of the Current Creditor. ........ 18

    **POINT IV:  CROWN AND BUREAUS ARE DEBT COLLECTORS LIABLE FOR THE CONDUCT OF THEIR COLLECTION AGENTS.** ........................................................................................ 20

        A.    Facts Regarding Crown .................................................................. 20

        B.    Facts Regarding Bureaus ................................................................ 22

        C.    Crown and Bureaus are "Debt Collectors" not "Creditors" .......... 23

        D.    Crown and Bureaus are Vicariously Liable ................................... 25

    **POINT V:  DEFENDANTS ASSERTED FACTS NOT BASED ON THE COMPLAINTS' ALLEGATIONS OR REASONABLE INFERENCES FAVORABLE TO THE PLAINTIFFS.** ........................... 27

**CONCLUSION AND RELIEF SOUGHT** ....................................... 30

i

Certification Pursuant to Fed. R. App. P. 32(a)(7)(B) and (C)................................31

Certificate of Service ................................................................................32

**TABLE OF AUTHORITIES**

**CASES**

*Aker v. BIG 15 Portfolio No. 15 LLC*,
No. 12-3633, 2014 WL 4185366 (N.D. Ill. Sept. 29, 2014) .........................26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................9

*Avila v. Rubin*,
84 F.3d 222, 229 (7th Cir. 1996) ..................................................................7

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
378 F. Supp. 2d 377 (S.D.N.Y. 2005) ...........................................................4

*Contemporary Mission, Inc. v. New York Times Co.*,
665 F. Supp. 248 (S.D.N.Y. 1987) *aff'd,*
842 F.2d 612 (2d Cir. 1988) ................................................................ 11, 12

*Curto v. Palisades Collection, LLC,*
No. 07–CV–529(S), 2011 WL 5196708
(W.D.N.Y. Oct. 31, 2011) .............................................................................17

*Davidson v. Capital One Bank (USA), N.A.*,
__ F.3d __, 2015 U.S. App. LEXIS 14714
(11th Cir. Aug. 21, 2015) .............................................................................25

*Dragon v. I.C. System, Inc.,*
483 F.Supp.2d 198 (D.Conn.2007) .............................................................17

*Fox v. Citicorp Credit Services, Inc.*,
15 F.3d 1507 (9th Cir. 1994) .......................................................................26

*Fritz v. Resurgent Capital Servs., LP*,
955 F. Supp. 2d 163 (E.D.N.Y. 2013)..........................................................27

*Gesten v. Phelan Hallinan, PLC*,
57 F. Supp. 3d 1381 (S.D. Fla. 2014)..........................................................18

iii

*Gill v. Credit Bureau of Carbon Cnty.*,
No. 14-CV-01888-KMT, 2015 WL 2128465
(D. Colo. May 5, 2015)................................................................18

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,
412 F.3d 360 (2d Cir. 2005) ............................................ 3, 4, 5, 7

*Hecht v. Green Tree Servicing, LLC*,
No. 3:12CV498 JBA, 2013 WL 164514
(D. Conn. Jan. 15, 2013)..............................................................18

*Irwin v. Mascott*,
112 F. Supp. 2d 937 (N.D. Cal. 2000)..........................................26

*Ivy v. Nations Recovery Ctr., Inc.*,
No. 2:12–CV–037, 2012 WL 2049387
(E.D.Tenn. June 6, 2012).............................................................16

*Jackson v. Aman Collection Serv.*,
No. IP 01–0100–C–T/K, 2001 WL 1708829
(S.D.Ind. Dec. 14, 2001).......................................................... 17, 18

*Jones v. Midland Funding, LLC*,
755 F. Supp. 2d 393 (D. Conn. 2010) ....................................... 13, 14, 15, 16

*Jones v. Midland Funding, LLC*,
No. 3:08–CV–802 RNC, 2012 WL 1204716
(D.Conn. Apr. 11, 2012), *appeal withdrawn* (Feb. 21, 2014)......................16

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ..........................................................9

*Kimber v. Fed. Fin. Corp.*,
668 F. Supp. 1480 (M.D. Ala. 1987)............................................26

*Madden v. Midland Funding, LLC*,
786 F.3d 246 (2d Cir. 2015) .......................................... 1, 12, 13

*Martsolf v. JBC Legal Grp., P.C.*,
2008 U.S. Dist. LEXIS 6876, 2008 WL 275719
(M.D. Pa. Jan. 30, 2008)..............................................................27

iv

*Marucci v. Cawley & Bergmann, LLP*,
    66 F. Supp. 3d 559 (D.N.J. 2014)........................................................... 16, 17

*Michalek v. ARS Nat. Sys., Inc.*,
    No. 3:11-CV-1374, 2011 WL 6180498
    (M.D. Pa. Dec. 13, 2011).......................................................................... 14, 18

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*,
    *214* F.3d 872 (7th Cir. 2000) ............................................................ 14, 15, 16

*Munoz v. Pipestone Fin., LLC*,
    397 F. Supp. 2d 1129 (D. Minn. 2005) .........................................................26

*Oberther v. Midland Credit Mgmt.*,
    45 F. Supp. 3d 125 (D. Mass. 2014)..............................................................27

*Okyere v. Palisades Collection, LLC*,
    961 F. Supp. 2d 508 (S.D.N.Y. 2013) ...........................................................27

*Plummer v. Atl. Credit & Fin., Inc.*,
    66 F. Supp. 3d 484 (S.D.N.Y. 2014) .............................................................27

*Pollice v. National Tax Funding, L.P.*,
    225 F.3d 379 (3d Cir. 2000) ..........................................................................26

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    369 F. Supp. 2d 353 (E.D.N.Y. 2005) .............................................................5

*Rodriguez v. Fulton Friedman & Gullace, LLP*,
    2012 U.S. Dist. LEXIS 122041 (S.D. Tex. Aug. 28, 2012) ..........................27

*Schutz v. Arrow Fin. Servs., LLC*,
    465 F. Supp. 2d 872 (N.D. Ill. 2006)............................................................26

*Slayton v. Am. Exp. Co.*,
    460 F.3d 215 (2d Cir. 2006), *as amended* (Oct. 3, 2006).............................10

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
    No. CIV.A. 07-5139, 2008 WL 2885887 (D.N.J. July 23, 2008) .......... 16, 17

v

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...........................................................9

*Stonecypher v. Finkelstein Kern Steinberg & Cunningham,*
    2:11–cv–13, 2011 WL 3489685 (E.D.Tenn. Aug. 9, 2011).........................17

*White v. Sherman Fin. Group, LLC*,
    984 F. Supp. 2d 841 (E.D. Tenn. 2013) ................................................ 26-27

## STATUTES

15 U.S.C. § 1692 ...........................................................................................1

15 U.S.C. § 1692a ........................................................................ 23, 24, 25, 28

15 U.S.C. § 1692e ............................................................................ 3, 4, 8, 17

15 U.S.C. § 1692f ........................................................................................13

15 U.S.C. § 1692g ............................................................................... passim

15 U.S.C. § 1692i .........................................................................................26

15 U.S.C. § 1692k .......................................................................................10

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...........................................................................9, 18

Fed. R. Civ. P. 15 .......................................................................................10

vi

## SUMMARY OF THE REPLY ARGUMENT

Defendants attempted to collect alleged debts from New York consumers including Plaintiffs, Annamarie Avila and Sara Elrod. Their first and only weapon was a form letter on law firm letterhead signed by a licensed attorney. The letter did not disclose the lawyer cannot not practice in New York, and that neither he nor his clients ever pursue any legal actions or remedies subsequent to sending that form letter. Although the letter disclosed the attorney was not acting as such with respect to sending the letter, it expressly stated that that limited role would change when, in fact, it *never* would. Thus, the lawyer's professional status was and always would be unrelated to Defendants' efforts to collect debts. Using that professional status, however, misleads the least sophisticated consumer and gains an unfair advantage over law-abiding collection agencies which don't pretend to be lawyers. That conduct violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq*.

Defendants' also attempted to collect an unlawful rate of interest from Avila. Her ability to assert an FDCPA claim based on the inclusion of excessive interest was recently confirmed by this Court's *Madden* decision. That claim was timely asserted in her Amended Complaint, which related back because it was based on the same letter which gave rise to the claims in her initial Complaint.

Avila's Amended Complaint also asserted sufficient facts to support her

claims that Defendants' letter—being their initial written communication to her—failed to state the amount of the debt by not informing her of accruing interest and failed to disclose the name of the current creditor because the identified party was not the current creditor.

Therefore, the district court's dismissal of Avila's Amended Complaint and Elrod's Complaint should be reversed and the case remanded for further proceedings.

**ARGUMENT**

**POINT I:   DEFENDANTS MISREPRESENTED A LAWYER'S ROLE IN THE DEBT COLLECTION PROCESS.**

The FDCPA proscribes a debt collector's use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA lists sixteen nonexclusive examples of conduct violating that section. Included in that list is the misrepresentation that a "communication is from an attorney" and the "threat to take any action that cannot legally be taken or that is not intended to be taken" 15 U.S.C. §§ 1692e(3) and 1692e(5).

Defendants' form letter violates 15 U.S.C. § 1692e by falsely representing the professional role of Stephen P. Riexinger and Riexinger & Associates, LLC when used to attempt to collect debts from New York consumers.

Defendants seek to hide their unlawful conduct by arguing for an unreasonable application of *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005). There, the so-called "Greco Disclaimer" was found to assist consumers to understand that attorneys admitted to practice in the *same* state as the consumers had a more limited role than would have been expected in the absence of the disclaimer when their firm mailed its initial collection letters which, importantly, were only signed by the firm (i.e., not by any individual attorney).

Defendants' misread *Greco* as giving *carte blanche* to attorneys regardless

3

of where they are licensed to use their law firm's letterhead and to personally sign collection letters regardless of the circumstances or how the letter might otherwise mislead the consumer as to the lawyer's role. *Greco*, however, does not create safe harbor for out-of-state attorneys to send letters over an individual attorney's signature when neither the attorney nor his law firm will *ever* act in any professional capacity but, nevertheless, waive their law degrees under consumers' noses while telling those consumers they will take any "action as necessary to protect our client" unless the consumer pays. JA-59; JA-109.

A. ***Riexinger Signed the Letters as an Attorney at Law.***

"In *Greco,* this Court found no violation of § 1692e(3) because the letter in question did not bear an attorney's signature and contained the requisite 'clear disclaimer.'" Def. Br. 22. Plaintiffs agree: this Court wrote, "The letter was not signed by any individual attorney. The firm's name, however, was printed as a signature block." *Greco,* 412 F.3d at 362. Thus, the law firm—and not any individual lawyer—sent the initial collection letter.

In an apparent attempt to bring this case under *Greco,* Defendants mistakenly contend their letters in this case were "unsigned." Def. Br. 8. Giving Plaintiffs all favorable inferences, the letters were personally signed by "Stephen P. Riexinger, Attorney at Law" using his typewritten or printed signature. *See, Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377 (S.D.N.Y. 2005) (typed

4

signature of company president on company's letterhead); and, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353 (E.D.N.Y. 2005) (in FDCPA case, the letter was signed with the printed signature of the sender). Thus, *Greco* is facially inapposite and factually distinguishable.

**B.** ***The Letters Misrepresented the Lawyer's Actual Role.***

When the letter in *Greco* stated that the law firm was retained to take "such action as necessary to protect our client" and, if the consumer did not respond, the law firm's "client may consider additional remedies to recover the balance due," those facts were true and not misleading. *Greco*, 412 F.3d at 361. Therefore, those phrases were not actionable.

Here, those statements were false and, therefore, *are* actionable.

Defendants' Brief never discussed or refuted that those statements were false. As alleged in the pleadings, Defendants would ***never*** consider or take any other action to collect alleged debts from New York consumers after sending the initial letters. Moreover, Mr. Riexinger and the company through which he conducted his solo practice ***never*** acts as a lawyer or a law firm when attempting to collect alleged debts from New York consumers. They never undertook any legal action necessary to protect their clients, and their clients never pursued any additional legal remedies. Thus, mimicking the Greco Disclaimer could not insulate Defendants from liability.

5

C.   *NY License Number 1414772.*

Defendants concede that their letter stated, "NY License Number 1414772," but that the license was issued by the *City* of New York and not the *State* of New York. Def. Br. 28. Thus, it falsely appeared to be issued by the State of New York.

It is undisputed that the letter disclosed the senders' dual roles: collecting debts *and* engaging in the practice of law. One activity is licensed by the City of New York while the other is licensed by any of the several States. Having identified Riexinger's license as one issued by the State of New York, and in the absence of any disclosure Riexinger was *only* admitted to practice law in Georgia, the letter leads the least sophisticated consumer to draw one of two possible inferences both of which were false. Such a consumer would infer that the State of New York either licensed the senders' debt collection activity or their practice of law. As Defendants conceded, "Collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." Def. Br. 19.

The statement that Defendants' letter came from a New York attorney is patently false and material. A New York consumer is more likely to respond to a letter sent by a licensed New York law firm. Consequently, the letter's inclusion of "NY License Number 1414772" was false, deceptive and misleading.

**D.** *Defendants Misinterpret Gonzalez and Lesher.*

Defendants acted as 'sheep in wolves' clothing'—taking an unfair advantage over other debt collectors whose wardrobes lack that attire but, because Riexinger looked like he was or would be acting as a lawyer, Defendants were in a better position than their lay counterparts to get a consumer's "knees knocking" and coerce a payment. *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

*Greco* did not address the use of the Greco Disclaimer in letters sent by out-of-state lawyers who *never* act as attorneys when collecting debts. The Third and Fifth Circuits considered the situation in *Lesher v. Mitchell N. Kay*, 650 F.3d 993 (3d Cir. 2011) and *Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009).

Defendants misread those decisions by making the over-simplistic distinction that the mere placement of the Greco Disclaimer on the front or back of the page dictated liability. The courts of appeal decisions were far more analytical. For example, the Third Circuit explained that the law firm's use of the Greco Disclaimer did not effectively counter "the specter of potential legal action [raised] by using its law firm title to collect a debt when the firm was not acting in its legal capacity." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d at 1003. Thus, like the decisions from this Court, the focus was on whether the letters accurately disclosed the attorney's role when it differed from what would be expected in the absence of any disclaimer.

7

Unlike any decisions yet from this Court, *Lesher* and *Gonzalez* considered the effect of the Greco Disclaimer when the law firm and its affiliated lawyers would *never* act in their professional capacities. Defendants never addressed that similarity to the case at bar.

Again, the alleged facts establish that no Defendant was ever going to act in any capacity as a lawyer or a law firm. Consequently, the letters should have either removed all references to attorneys, law firms, and clients. Alternatively, the letter should have had a clear disclaimer explaining the truth of Defendants' roles. For example:

> This letter is NOT from a lawyer or a law firm. Stephen P. Riexinger and Riexinger & Associates, LLC NEVER act as a lawyer or a law firm when attempting to collect this debt. Mr. Riexinger is NOT admitted to practice law in New York and no other attorneys are associated with Riexinger & Associates, LLC. Therefore, contrary to anything else stated in this letter, we will NEVER sue you.

Otherwise, the letters were materially false, deceptive, and misleading in violation of § 1692e.

**POINT II: AVILA'S VALID UNLAWFUL INTEREST CLAIM IS NOT TIME-BARRED.**

Defendants sought to collect interest from Avila at a rate far in excess of the rate allowed under New York state law. Defendants dispute the claim, contend that

it is time-barred, and argue that Avila has forfeited her right to dispute Defendants'
limitations defense. Defendants are wrong.

### A. *Avila May Contest the Statute of Limitations Defense.*

"The lapse of a limitations period is an affirmative defense that a defendant
must plead and prove." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425
(2d Cir. 2008). A defendant may raise the defense in a pre-answer motion under
Fed. R. Civ. P. 12(b)(6) when the defense appears on the face of the complaint. *Id.*

The test under Fed. R. Civ. P. 12(b)(6) is whether the complaint has
plausibly stated a cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).
Plaintiffs' Brief demonstrated Avila's plausible cause of action arising from the
Avila Defendants' attempt to collect an amount which included interest in excess
of the lawful rate. Pltf. Br. 25. It then became incumbent on Defendants to argue
why the claim should nevertheless be dismissed including, if applicable, asserting a
statute of limitations defense. It was not for Avila to make Defendants' arguments
in advance of them being raised. Consequently, Avila did not waive her right to
contest Defendants' limitations defense.

The case cited by Defendants, *JP Morgan Chase Bank v. Altos Hornos de
Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005), does not hold otherwise.
Unlike the facts here, the appellant had raised a brand new argument in its reply
brief which the Court properly refused to consider. Nonetheless, the Court also

recognized its discretion to excuse the error.

Thus, it is appropriate for Avila to respond here to Defendants' statute of limitations defense which was raised in their opposing brief.

B. ***The Claims Asserted in the Amended Complaint Relate Back.***

There is no dispute that Avila's FDCPA claims are subject to a one-year limitations period under 15 U.S.C. § 1692k(d). It is equally undisputed that the Avila Defendants were on notice that the August 2, 2012 letter gave rise to her FDCPA claims, her case was commenced on July 31, 2013 (JA-3), and her Amended Complaint was filed on March 3, 2014. Thus, within one year, Defendants were put on notice of the fact their letter violated the FDCPA.

Defendants contend the Amended Complaint does not relate back. Def. Br. 32. An amended complaint, however, relates back to the date of filing the first complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Defendants' Brief never mentioned this Court's decision in *Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006), *as amended* (Oct. 3, 2006). There, the Court made clear that review of relation back is *de novo* and the inquiry is "whether the facts provable under the amended complaint arose out of *conduct* alleged in the original complaint." *Id.,* 460 F.3d at 227. The Court explained, "The purpose of

10

Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Id.* at 228 (internal quotation marks omitted).

It is undisputed that both the original claims and the amended claims arise from Defendants' August 2, 2012 letter mailed to Avila. Thus, the amended claims arose out of the same conduct and relate back.

*Contemporary Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248 (S.D.N.Y. 1987) *aff'd,* 842 F.2d 612 (2d Cir. 1988) similarly involved claims arising from a single writing made by the defendant. A group of priests sued the New York Times for defamation arising from a published news article; here, Avila sued Defendants for FDCPA violations arising from a letter. In *Contemporary Mission,* the priests amended the complaint adding new defamation claims arising from the very same article. Here, Avila amended her complaint adding new FDCPA claims arising from the very same letter.

The New York Times moved to dismiss. Just as the Defendants did here, the NY Times argued the added claims were not filed within the limitations period and did not relate back. In concluding the new claims did relate back, the Court explained:

> The critical inquiry under Rule 15 is whether the defendant ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the

conduct, transaction, or occurrence set forth in the original pleading might be called into question. When a suit is filed in federal court, ***the defendant knows that the whole transaction described in it will be fully scrutinized, by amendment if necessary***. ***It knows that discovery will follow, and that leave to amend will be freely granted***. Thus defendant here should have anticipated that other aspects of the November 1, 1980 article might be challenged. No additional work on its part was required to prepare a defense against the added charges, other than a stretch of memory on the part of its employees.

*Contemporary Mission, Inc. v. New York Times Co.*, 665 F. Supp. at 256 (internal quotation marks and citations omitted) (emphasis added).

Similarly, Avila's original complaint put Defendants on notice that the entire circumstances surrounding their collection letter would be investigated through discovery and new claims suggested by discovery would be alleged by way of amended pleadings. And, that is precisely what happened here.

The Amended Complaint recited that the information supporting the three new claims were known to Defendants but the information was withheld until disclosed on October 29, 2013. JA-27, JA-28 at ¶¶92-94.

Consequently, the claims raised in Avila's Amended Complaint relate back and, therefore, were not barred by the statute of limitations.

C. ***Avila Asserted a Valid Claim for Usurious Interest Rates.***

Plaintiffs' Brief cited *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015) for the proposition that attempting to collect debts in excess of the

amount permitted under New York law violates the FDCPA. Pltf. Br. 25.

Defendants' Brief ignored *Madden.*

Instead, Defendants asserted that New York's criminal usury statute does not give rise to a private cause of action—but, Defendants conceded it could be raised as a defense in a collection action. Def. Br. 39. Defendants failed to understand that Avila does not assert a private cause of action based on that criminal statute. Instead, she claimed that, by sending the letter, Defendants attempted to collect usurious interest which was neither authorized by contract or by law in violation of, *inter alia*, 15 U.S.C. § 1692f. JA-39 (¶146). *Madden* permits such claims.

## POINT III: DEFENDANT'S LETTER FAILED TO STATE THE DEBT'S AMOUNT AND THE CURRENT CREDITOR.

The Avila letter failed to provide the "Current Balance" because the amount stated was no longer current by the time she received it. In addition, the letter stated Crown was the current creditor when, as alleged, it was not. Therefore, her Amended Complaint asserted violations of 15 U.S.C. §§ 1692g(a)(1) and 1692g(a)(2), which required disclosure of both the amount of the debt and the name of the creditor to whom the debt is owed.

### D.   *The Letter Unlawfully Failed to Disclose Accruing Interest.*

Defendants mischaracterized the § 1692g(a)(1) claim as a "duty to warn." Avila pointed the Court to *Jones v. Midland Funding, LLC*, 755 F. Supp. 2d 393 (D. Conn. 2010) (*Jones*). Pltf. Br. 26. Defendants observed that the lower court

13

chose to disregard *Jones.* Def. Br. 42-43.

Defendants also sought to distinguish *Jones* because, unlike the letter sent to Avila, Midland Funding's letter included an offer to settle for a discounted amount. Def. Br. 44. Such a distinction has been rejected by courts. The rationale for disclosing accruing interest in letters which state the "outstanding debt" and not just settlement letters because of "the need for consumers to be aware that this debt may be dynamic or static." *Michalek v. ARS Nat. Sys., Inc.*, No. 3:11-CV-1374, 2011 WL 6180498, at *5 (M.D. Pa. Dec. 13, 2011).

In *Jones*, the debt collector sent a collection letter stating the "Current Balance" was $2,096.06, but "[n]o itemization was provided and there was no mention of interest or other charges." *Id.* at 396. In fact, however, interest was accruing. Jones sued alleging a violation of § 1692g(a)(1).

The *Jones* court considered the competing line of cases: those which held that merely stating the current balance on the letter's date was sufficient, and those which required that, when true, the letter "also disclose[] whether the amount of the debt will increase due to interest." *Jones, supra,* 755 F. Supp. 2d at 397. The court found the latter to be the better reasoned decisions, referring to them as the "Miller" line of cases following *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). Therefore, *Jones* held that "a validation notice fails to correctly state the amount of the debt as required by

14

§ 1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate." *Id.* at 397. The court reasoned, "If a validation notice lacks this information, the least sophisticated consumer, *although aware that debt typically accrues interest*, may be left uncertain as to the amount of the debt." *Id.* at 397-98 (emphasis added).

In *Miller,* Judge Posner, writing for the court, reasoned that, when interest is ongoing, a letter's statement as to the balance informed the consumer of "only a part of the debt." *Id.* at 875. Judge Posner drafted safe-harbor language which some courts have criticized. Nevertheless, courts—like *Jones*—follow *Miller*'s underlying reasoning: when interest is accruing, the debt collector's letter must accurately inform the consumer of that fact.

Defendants would have this Court think that *Miller* held "All that must be disclosed is 'the total amount due . . . [sic] on the date the [collection] [sic] letter was sent.'" Def. Br. 41. By editing the quote, Defendants turned a quote which *required* disclosure of accruing interest, to one that did not. The full quote (underlining the words selectively provided in Defendants' Brief) stated:

> What they [the debt collectors] certainly could do was to
> state <u>the total amount due</u>—*interest and other charges*
> *as well as principal*—<u>on the date the dunning letter was</u>
> <u>sent</u>. We think the statute required this. [*Miller, supra,*
> 214 F.3d at 875-76 (emphasis added).]

The Seventh Circuit appears to be the only Court of Appeals to decide this

issue and it did so favorably to Avila's claim. The substantial majority of district court cases are aligned with *Miller*.

In *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559 (D.N.J. 2014), the court followed an unpublished decision, *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887 (D.N.J. July 23, 2008). Quoting *Smith*, *Marucci* stated (editing by the court):

> This hypothetical person, who is both gullible and naive, might believe that he could pay his debt in full by remitting the sum of the principal and interest stated in the [ ] letter at any time after he received that letter. Such a belief would be incorrect because the total amount of the debt was and is subject to periodic adjustment by [the debt collector]. [Plaintiff] therefore states a claim for a violation of § 1692g(a)(1).

*Marucci* further observed:

> Many other cases have reached a similar conclusion. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 875 (7th Cir. 2000) (holding that debt collector must "state the total amount due—interest and other charges as well as the principal"; and fashioning a "safe harbor" formula in which the accrual of interest is specifically dealt with); *Jones v. Midland Funding, LLC,* […]; *Jones v. Midland Funding, LLC,* No. 3:08–CV–802 RNC, 2012 WL 1204716 at *6 (D.Conn. Apr. 11, 2012), *appeal withdrawn* (Feb. 21, 2014) (on reconsideration, adhering to the original *Jones* ruling, distinguishing new cases from other courts, and finding that a settlement offer does not protect a debt collector from liability where the collector fails to disclose whether interest is accruing on the debt); *Ivy v. Nations Recovery Ctr., Inc.,* No. 2:12–CV–037, 2012 WL 2049387 at *2 (E.D.Tenn. June 6, 2012) (finding that

16

Plaintiff had stated a claim where a debt collector's letter
"did not state whether interest was accruing and, if so,
the currently-applicable interest rate"); *Curto v.
Palisades Collection, LLC,* No. 07–CV–529(S), 2011
WL 5196708 at *8 (W.D.N.Y. Oct. 31, 2011) (finding
that a collection letter's omission of the amount of
interest owed would be misleading if the Defendants
were afterward going to seek interest); *Stonecypher v.
Finkelstein Kern Steinberg & Cunningham,* 2:11–cv–13,
2011 WL 3489685 at *5 (E.D.Tenn. Aug. 9, 2011)
(finding that debt collector violated Section 1692g(a)(1)
by omitting from the statement of the amount of the debt
any indication that interest was accruing or what the
applicable interest rate was); *Dragon v. I.C. System, Inc.,*
483 F.Supp.2d 198, 201–03 (D.Conn.2007) (finding that
a communication violated Sections 1692g(a)(1) and
1692e (2) and (10) by not "specifically indicat[ing] the
date as of which the BALANCE DUE' amount was the
full amount of the debt," and was "potentially misleading
for the least sophisticated consumer who could readily
conclude that the total amount stated as due ... was due *at
any time,*when in fact it was not and was subject to
adjustment ... on a periodic basis." (emphasis in
original)); *Jackson v. Aman Collection Serv.,* No. IP 01–
0100–C–T/K, 2001 WL 1708829 at *3 (S.D. Ind. Dec.
14, 2001) (finding that plaintiff stated a claim because
the collection letter did not specify the date as of which
the "total due" was accurate, and also because the accrual
of interest was not sufficiently explained in the letter).

*Marucci v. Cawley & Bergmann, LLP*, *supra,* 66 F. Supp. 3d at 565-66.

In addition to *Smith, Marucci* and the eight decisions cited in *Marucci,*
counsel has found the following five decisions all standing for the same
proposition that, when interest is accruing, disclosure must be made in the notice
sent under § 1692g(a):

*Gill v. Credit Bureau of Carbon Cnty.*, No. 14-CV-01888-KMT, 2015 WL 2128465 (D. Colo. May 5, 2015); *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014); *Hecht v. Green Tree Servicing, LLC*, No. 3:12CV498 JBA, 2013 WL 164514 (D. Conn. Jan. 15, 2013); *Michalek v. ARS Nat. Sys., Inc.*, *supra*; and, *Jackson v. Aman Collection Serv. Inc.*, No. IP01-0100-C-T/G, 2001 WL 1708829 (S.D. Ind. Dec. 14, 2001). In sum, fifteen decisions all come down the same way in Avila's favor.

Defendants' Brief cited four contrary district court decisions, only one of which was reported.

Avila submits that the Court should follow the overwhelming number of authorities which consistently require, when true, the disclosure of accruing interest in the written notice sent pursuant to § 1692g(a).

### E. *The Letter Failed to State the Name of the Current Creditor.*

There is no dispute that the letter sent to Avila identified Crown as the current creditor. The Amended Complaint, however, alleged that Crown was <u>not</u> the current creditor. Defendants having failed to correctly identify the current creditor, Avila stated a claim for violation of § 1692g(a)(2).

It is undisputed—at least for purposes of reviewing a dismissal under Fed. R. Civ. P. 12(b)(6)—that Defendants sent Avila a letter identifying Crown as the current creditor although Crown was <u>not</u> the current creditor. Crown was alleged to

18

provide "accounts receivable management" and is a "consulting firm." JA-19

(¶36). Those services imply that Crown does not itself own the debts but, instead,

manages and consults with *others* who own the debts.

Once again, Defendants' Brief selectively quoted the underlying material to

make it appear as if Crown only acquires debts. Contrary to Defendants' argument,

Def. Br. 47, the Amended Complaint, at ¶36, did not state that Crown acquires

debts. Instead, it alleged that, according to Crown's website, its personnel have

*experience* in acquiring debts. Presumably, Crown touts that experience so as to

promote its expertise in providing management and consulting in the accounts

receivable arena.

Further, Avila's Amended Complaint states that the creditor sold her alleged

debt to "an unknown purchaser of defaulted consumer debts"—who is not

Crown—and that the unknown debt buyer then "assigned, placed, or transferred

the debt to Crown for collection." JA-18-19 (¶¶31; 36) *cf.* JA-90 (¶29) ("...*sold* the

debt to Bureaus").

Both the direct denial of the letter's claim that Crown is the current creditor

and the implications from Crown's website support the plausibility that Crown is

not the current creditor and, therefore, Avila has stated a claim for violation of

§ 1692g(a)(2).

19

## POINT IV: CROWN AND BUREAUS ARE DEBT COLLECTORS LIABLE FOR THE CONDUCT OF THEIR COLLECTION AGENTS.

Crown and Bureaus are debt collectors subject to liability under the FDCPA. As such, they are liable for their unlawful debt collection activities. As limited liability companies, they can only act through agents. Thus, they are liable for the unlawful conduct of their agents to the same extent as they would be if they performed those acts for themselves as natural persons.

In Point IV of Defendants' Brief, Def. Br. 48, Crown and Bureaus attempt to escape liability for the authorized—but unlawful—conduct of their agents, Riexinger & Associates, LLC and its sole member, Stephen P. Riexinger. Their arguments find no basis in law and are inconsistent with the facts alleged in the pleadings.

### A.  *Facts Regarding Crown*

It cannot be disputed that Crown is a "debt collector" as defined by the FDCPA. JA-19 (¶¶35-37; 39). Nor is there a dispute that the debt Crown attempted to collect is a "debt" as defined by the FDCPA. JA-19 (¶¶35-37; 39).

Riexinger and Crown both conduct their business affairs from the same principal office located at 3100 Breckinridge Blvd, Suite 722, Duluth, Georgia. JA-16, JA-17 (¶¶17, 20). Riexinger is a principal owner, director, shareholder, and/or managing partner of Crown and also serves as its General Counsel, which is a fact Defendants at all times tried to conceal from Avila and other similarly situated

20

consumers in their attempts to collect debts. JA-19 (¶38).

Crown is not a creditor. JA-19 (¶40). Crown engaged in affirmative conduct when collecting debts from Avila and other New York residents in that it "charged, took, or received money," and was "engaged in conduct that was part of a scheme or business of...collecting usurious amounts of interest" and was itself "collecting usurious loans." JA-19-20; 25; 27-28 (¶¶41-42; 79-81; 93-94).

Crown is responsible for the printing and mailing of the August 2, 2012 Letter and others like it using Riexinger's law firm letterhead that are sent to Avila and other similarly situated consumers. JA-31-32 (¶116). In fact, the mailing address listed on Riexinger's law firm letterhead actually "belongs to Crown." JA-32 (¶117). Crown pays Riexinger and his law firm "a modest fee for its renting of their law firm letterhead to send [Avila] and other similarly situated consumers mass-produced, computer generated collection letters." JA-32 (¶118). In short, Crown and Riexinger are "are mere alter egos of one another who share, *inter alia*, the same resources, equipment, mailing address, office space, and personnel." JA-31 (¶115).

At all times relevant to the Amended Complaint, there was a principal-agent relationship between Crown on the one-hand, and Riexinger and his law firm on the other. JA-32 (¶119). Further, at all times relevant to the Amended Complaint, Riexinger and his law firm acted within the "the scope of their employment" and

"were under the direct supervision, control, and approval of Crown." JA-32 (¶120).

When attempting to collect debts, it is Crown's policy and practice to send written communications in the form attached to Avila's Amended Complaint including a joint scheme to collect usurious amounts of interest. JA-13 (¶2); JA-21 (¶53); JA-23 (¶¶67-69); JA-25 (¶77); JA-27-29 (¶¶92-94; 98-99); JA-31 (¶¶114-115); JA-33-34 (¶¶122; 125-129); JA-37-39 (¶¶135-139; 141-150).

**B.** *Facts Regarding Bureaus*

Bureaus, like Crown, is a "debt collector" as defined by the FDCPA. JA-90-91 (¶¶26-31). Furthermore, Bureaus attempted to collect a "debt" as defined by the FDCPA. *Id.*

At all times relevant to the Elrod's Complaint, there was a principal-agent relationship between Bureaus on the one-hand, and Riexinger and his law firm on the other. JA-101 (¶95). Further, at all times relevant to the Elrod's Complaint, Riexinger and his law firm acted within the "the scope of their employment" and "were under the direct supervision, control, and approval of Bureaus." JA-101 (¶¶95-97).

It is Bureau's policy and practice to send Elrod and other similarly situated consumers written communications, in the form attached to Elrod's complaint, in their attempt to collect debts, which violate the FDCPA. JA-86 (¶2); JA-92 (¶46); JA-96-102 (¶¶67-72; 82; 86-87; 94; 98-100; 103).

C.   *Crown and Bureaus are "Debt Collectors" not "Creditors"*

Crown and Bureaus have not challenged that the pleadings sufficiently aver that the debts they sought to collect from Plaintiffs are "debts" as defined by 15 U.S.C. § 1692a(5), and that each Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

Defendants do not argue that Crown and Bureaus are "creditors." Rather, they skirt the issue by attempting to distance themselves from their debt collector agents retained to collect debts on their behalf. Instead, they simply contend that neither entity "is responsible as a debt collector under the FDCPA for the statements made in or omitted from the two letters that form the basis for Plaintiffs' claims." Def. Br. 49.

They begin with the axiom which states that "[t]he FDCPA imposes duties only on debt collectors... and <u>creditors</u> are not subject to liability, vicariously or otherwise, for the acts of debt collectors." (Emphasis added). Def. Br. 48. Plaintiffs agree. As <u>debt collectors</u>, however, Crown and Bureaus *are* subject to liability.

The Plaintiffs' well-pled factual allegations establish that Crown and Bureaus are debt collectors involved with their debt collector agents in the collection of debts. As for Crown, Avila's Amended Complaint alleged:

- the *unknown* creditor of Avila's alleged default debt assigned, placed, or transferred, the debt to Crown for collection. JA-18 (¶¶31-32; 35).

23

- Crown markets itself as a professional receivables management and consulting firm whose personnel have extensive experience in acquiring, collecting, and liquidating non-performing consumer debts that are in default. JA-19 (¶¶31-32; 35).

- Crown collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself <u>and</u> other debt buyers using the U.S. Mail, telephone, and Internet. JA-19 (¶37).

As for Bureaus, Elrod's Complaint pled:

- the unknown creditor of Elrod's alleged default debt assigned, placed, transferred, or *sold* the debt to Bureaus for collection. JA-90 (¶¶25-26; 29).

- Bureaus collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself <u>and</u> other debt buyers using the U.S. Mail, telephone, and Internet. JA-91 (¶30).

These factual allegations, if proven, unmistakably establish that Crown and Bureaus are each a "debt collector" as defined by 15 U.S.C. § 1692a(6) and not a "creditor" as defined by 15 U.S.C. § 1692a(4).

In contrast to a "debt collector", a "creditor" is "any person who offers or

24

extends credit creating a debt or to whom a debt is owed" and "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" is <u>excluded</u> from the definition of "creditor." § 1692a(4).

Enforcing the FDCPA's plain language, the Eleventh Circuit recently held that, even when the consumer's debt was in default at the time a bank acquired it, the bank is not a "debt collector" when it does not regularly collect or attempt to collect debts "owed or due another" and when "the collection of any debts" is not "the principal purpose" of the bank's business. *Davidson v. Capital One Bank (USA), N.A.*, __ F.3d __, 2015 U.S. App. LEXIS 14714 (11th Cir. Aug. 21, 2015).

Here, Plaintiffs' factual allegations establish that Crown and Bureaus are debt collectors whose principal purpose is the collection of defaulted consumer debts. Neither entity is "a savings bank, savings and loan association, or federal savings and loan association." *See*, *e.g.*, JA-27 (¶91). Therefore, Crown and Bureaus' activity, as alleged by Plaintiffs, is specifically the activity of a "debt collector" under the FDCPA.

### D. *Crown and Bureaus are Vicariously Liable.*

Defendants cite a single, unreported, decision from the Northern District of Illinois in support of their contention that neither Crown nor Bureaus can be held liable even if Reixinger's letters are ultimately found to have violated the FDCPA.

25

*See* Brief at pgs. 49-50 (citing *Aker v. BIG 15 Portfolio No. 15 LLC*, No. 12-3633, 2014 WL 4185366 (N.D. Ill. Sept. 29, 2014)). Defendants failed to alert the Court to the well-established body of case law, which directly controverts their argument.

Indeed, the overwhelming weight of authority holds that an entity which is itself a "debt collector" may be held vicariously liable under the FDCPA for the unlawful collection activities carried out by another on its behalf without regard to its level of involvement. *See, e.g., Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) ("[T]o give reasonable effect to section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) (discussing the legislative history of the FDCPA and noting its intent to reach "third party" or "independent" debt collectors "who generally are [not] restrained by the desire to protect their good will when collecting past due accounts"); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-405 (3d Cir. 2000) ("an entity that is itself a "debt collector"—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 961 (N.D. Cal. 2000); *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129, 1133 (D. Minn. 2005); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 875-76 (N.D. Ill. 2006); *White v. Sherman Fin. Group, LLC*, 984 F. Supp. 2d 841,

26

853-54 (E.D. Tenn. 2013); *Oberther v. Midland Credit Mgmt.*, 45 F. Supp. 3d 125, 129-30 (D. Mass. 2014); *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-16 (S.D.N.Y. 2013); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 177 (E.D.N.Y. 2013); *Martsolf v. JBC Legal Grp., P.C.*, 2008 U.S. Dist. LEXIS 6876, 2008 WL 275719, at *11 (M.D. Pa. Jan. 30, 2008); *Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 U.S. Dist. LEXIS 122041, *21-27 (S.D. Tex. Aug. 28, 2012).

Consequently, Crown and Bureaus are each liable for the conduct of their debt collector agents, Riexinger and his company, who violated the FDCPA while attempting to collect debts on their behalf.

## POINT V: DEFENDANTS ASSERTED FACTS NOT BASED ON THE COMPLAINTS' ALLEGATIONS OR REASONABLE INFERENCES FAVORABLE TO THE PLAINTIFFS.

Defendants concede, as they must, that the Court "must accept all well-pleaded factual allegations in the complaint[s] as true and draw all reasonable factual inferences in Plaintiff[s'] favor." Def.Br. 18.

Nevertheless, Defendants improperly included purported facts in their Statement of the Case which were not based on the pleadings. Def. Br. 5, *et seq.* Defendants asserted facts by drawing inferences from facts which were never alleged in Avila's Amended Complaint, Def. Br. 10, or Elrod's Complaint,

Def. Br. 11-12. Such inferences should not be drawn because they are not based on the facts alleged in the pleadings and, even if they had been alleged, the inferences must be favorable to the Plaintiffs.

Moreover, those purported facts—such as the making of any payments— primarily assert unalleged facts regarding the *Plaintiffs'* conduct. They have no bearing on the FDCPA claims under review which only address *Defendants'* conduct. Therefore, those improper factual contentions should be disregarded.

Defendants also engage in derogatory, and unnecessary, name-calling. They attempt to brand each Plaintiff, as well as the people from whom they attempt to collect, as a "debtor." Def.Br. 2, 15, 16, 21, 22, 25, 27, 43, and 44. Nothing in this case has to do with debtors.

The FDCPA protects a "consumer," not a debtor. A "consumer" is defined to include those natural persons who are "*allegedly* obligated to pay any debt." 15 U.S.C. § 1692a(3). Thus, whether a Plaintiff is indebted on a financial obligation is a fact which is irrelevant to their FDCPA claims. Furthermore, the complaints themselves do not allege that any Plaintiff is a "debtor" and the allegations do not support an inference favorable to the Plaintiffs that they are "debtors."

Instead, the focus of an FDCPA claim is on the conduct of debt collectors. Consequently, an alleged debt's merits are insignificant. Indeed, Defendants' name-calling is an invitation to disparage the Plaintiffs. The Court should decline

the invitation.

To establish that each Plaintiff is a "consumer" under the FDCPA, one need look no further than Defendants' own letters to see that Defendants ***alleged*** Avila and Elrod to be obligated on a financial obligation. JA-59, JA-109. Furthermore, the complaints consistently stated that each Plaintiff was *alleged* to owe a debt. See, Avila Amended Complaint, JA-13 *et seq.*[1]; and Elrod Complaint at JA-86 *et seq.*[2] Therefore, Plaintiffs are "consumers" under the FDCPA—not "debtors."

---

[1] Specifically, see JA-13 (¶1), JA-14 (¶3), JA-18 (¶¶27, 29) JA-19 (¶33), JA-22 (¶¶61, 62), JA-24 (¶¶73, 74), JA-30 (¶108), JA-31 (¶¶113, 114), JA-32 (¶¶119, 120), JA-39 (¶¶149, 150), JA-43 (¶174), JA-44 (¶176), and JA-49 (¶217).

[2] Specifically, see JA-86 (¶1), JA-89 (¶21), JA-90 (¶¶22, 23, 27), JA-95 (¶61), JA-98 (¶¶78, 79), JA-100 (¶¶88, 93, 94), JA-101 (¶¶95, 96), and JA-106 (¶121).

29

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the district court's judgment of dismissal should

be reversed and the case should be remanded for further proceedings.

Respectfully submitted,

*s/Philip D. Stern*

Dated: August 24, 2015

Philp D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
2816 Morris Avenue, Suite 30
Union, New Jersey 07083-4870
Telephone: (973) 379-7500
E-Mail: philip@sternthomasson.com
E-Mail: andrew@sternthomasson.com

*Attorneys for Plaintiffs-Appellants*

**Certification Pursuant to** Fed. R. App. P. 32(a)(7)(B) **and (C)**

The undersigned hereby certifies that Appellant's foregoing Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 6,645 words of text.

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2013, Times New Roman, Size 14.

*s/Philip D. Stern*
Philp D. Stern
Andrew T. Thomasson
STERN•THOMASSON LLP
2816 Morris Avenue, Suite 30
Union, New Jersey 07083-4870
Telephone: (973) 379-7500
E-Mail: philip@sternthomasson.com
E-Mail: andrew@sternthomasson.com

*Attorneys for Plaintiffs-Appellants*

31

## Certificate of Service

CAPTION: *Annmarie Avila, an individual; on behalf of herself and all others similarly situated, Sara Elrod, an individual; on behalf of herself and all others similarly situated v. Riexinger & Associates, LLC, a Georgia Limited Liability Company, Crown Asset Management, LLC, a Georgia Limited Liability Company, Stephen P. Riexinger, an individually and in his official capacity, John and Jane Does, Numbers 1 through 25, Bureaus Investment Group Portfolio No.15, LLC, an Illinois Limited Liability Company*

DOCKET NUMBER: 15-1584, 1597

    I, Philip D. Stern, hereby certify under penalty of perjury that on August 24, 2015, I served the Brief of Appellants by (select all applicable)

                 ___ United States Mail
                 ___ Third Party
                 ___ Overnight Mail
                 ___ Facsimile
                 ___ E-mail
                 ___ Hand delivery
                 _X_ ECF

on the following parties:

    William G. Ballaine, Jennifer Ashley Ramme, and Tina S. Bhatt
    Landman Corsi Ballaine & Ford P.C.
    120 Broadway, 27th Floor
    New York, NY 10271
    (212) 393-7908
    wballaine@lcbf.com
    *Counsel for Defendants-Appellees*

                 *s/Philip D. Stern*
                 Philip D. Stern
                 STERN•THOMASSON LLP
                 2816 Morris Avenue, Suite 30
                 Union, New Jersey 07083-4870
                 Telephone: (973) 379-7500
                 E-Mail: philip@sternthomasson.com

                 *Attorneys for Plaintiffs-Appellants*